COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Alston and Senior Judge Clements
Argued at Alexandria, Virginia


DAVID LEE TESTERMAN
                                                        OPINION BY
v.     Record No. 2823-09-4                    JUDGE JAMES W. HALEY, JR.
                                                        OCTOBER 5, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Kevin J. Gerrity, Senior Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


I.  INTRODUCTION

The construction fraud statute, Code § 18.2-200.1, requires a person to receive an

advance "upon a promise to perform construction."  Appealing his convictions under this statute,

David Lee Testerman argues the evidence failed to prove he promised to perform construction

since the advances he received paid only for supplies, not labor.  He maintains he only promised

to obtain supplies.  We hold a person receiving an advance for supplies obtains an advance under

this statute where the advance comes as a result of, or because of, a promise to perform

construction.  As Testerman's conduct meets this standard, we affirm.

II.  BACKGROUND

Beginning in the summer of 2002, the Kinney family hired Testerman to perform

construction work.  As part of bathroom renovations in their home, the Kinneys decided to install

new countertops.  Testerman received an advance of $1,300 to purchase the countertops.  However, the countertops never arrived and Testerman did not return the money.

The Kinneys also employed Testerman to work on a townhouse they owned in Ocean City, Maryland.  Testerman received an advance of $1,800 to buy new patio doors.  The doors did not come, and Testerman did not return this money.

In the case of both the countertops and the doors, the Kinneys intended the advances to pay only for supply costs, not labor.  The Kinneys compensated Testerman for his labor at an hourly rate and paid him as he performed the work.

Testerman was to install the countertops and doors.  At trial, Mrs. Kinney was questioned:  "And he was to install the countertops himself?"  She responded:  "Yes."  A letter demanding repayment admitted without objection at trial declared concerning the countertops:  "You stated you would work at my house the weekend of November 9 and 10, and that you would 'take care of everything.'  You stated that you would positively complete the job this week the week before Thanksgiving."  Mr. Kinney was asked at trial about the patio doors:  "So he was to install them as well?"  He replied:  "Yeah.  I would have him install them, sure, or I would help with it."  The demand letter also wrote:  "I paid you $1800.00, on October 2, 2002, for French doors that you were to help install in a townhouse I own in Ocean City, Md.  We planned several weekends to work, but the doors never arrived."

A jury convicted Testerman of construction fraud based on these failures.  He now appeals.

### III.  ANALYSIS

Testerman argues he did not obtain the advances "upon a promise to perform construction" within the meaning of Code § 18.2-200.1.  He argues that since the advances paid

only for supplies, not labor, he did not promise to perform construction, but rather promised to purchase supplies.[1]  We hold Testerman's actions fall within the statute.

## A.  Standard of Review

On appeal, we view "the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence."  Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008).  We ask only if "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We "will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."  Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

On the other hand, statutory interpretation involves *de novo* review.  Wright v. Commonwealth, 275 Va. 77, 80-81, 655 S.E.2d 7, 9 (2008).  Statutory interpretation aims primarily to determine legislative intent.  Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998).  "In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise."  Phelps v. Commonwealth, 275 Va. 139, 142, 654 S.E.2d 926, 927 (2008).  We strictly construe penal statutes against the Commonwealth, Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008), but

---

[1] In arguing a motion to strike at trial, counsel stated:  "I also have a problem with this being a construction fraud charge because . . . [Mr. Kinney] testified that that was for materials only."  Counsel continued:  "Again, what we have here is some testimony that that check is not for labor but specifically for a countertop.  Now, this might fall under [a false pretenses charge], Your Honor, but definitely not a construction fraud charge."  In renewing the motion at the end of the case, counsel argued:  "In the case that Mr. Testerman's facing here the door is in question and the countertops.  Those payments were paid in advance exclusively so that Mr. Testerman could get a discount and that those goods be delivered, goods being the operative word, Your Honor."

"will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein," Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

## B.  Application

Code § 18.2-200.1 provides:

> If any person obtain from another an advance of money . . . with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property, or any other improvements to such real property . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money . . . if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

The statute requires an advance be paid "upon a promise to perform construction."  Id.; see also McCary v. Commonwealth, 42 Va. App. 119, 126, 590 S.E.2d 110, 114 (2003) (noting an element of the offense is "a promise to perform construction or improvement involving real property").  Obviously, advances given for materials alone, unaccompanied by any promise of labor, do not fall within the statute.  Yet we believe the statute does encompass advances provided for materials to be purchased for construction work where the person receiving the advance has also promised to perform construction.

First, it has importance that the statute places the word "upon" before "a promise to perform construction" to describe when the advance must occur.  According to the dictionary, two possible definitions of "upon" include "a beginning course of action or an action or condition that is a beginning" and "immediately following on: very soon after."  Webster's Third New Int'l Dictionary of the English Language Unabridged 2518 (2002).  These definitions reveal the advance must come as a result of, or because of, a promise to perform construction.  A

person promises to perform construction work and receives an advance as a result. The advance may facilitate the work by providing funds to buy materials for use in the construction. It is not necessary that the advance pay directly for labor expenses.

Second, advances for supplies represent a common part of construction work that the General Assembly undoubtedly had in mind when writing the statute. This Court has found "that the underlying intent of the statute is to prohibit the fraudulent receipt of funds for construction work involving buildings or other structures permanently annexed to real property." Boothe v. Commonwealth, 4 Va. App. 484, 490, 358 S.E.2d 740, 744 (1987). If we were to hold that advances paid for materials within construction work did not fall within the statute, we would exclude many instances the General Assembly plainly intended to cover. While we have not directly addressed this issue before, the facts of our cases demonstrate the frequency of advances for this purpose. See, e.g., Holsapple v. Commonwealth, 39 Va. App. 522, 531, 574 S.E.2d 756, 760 (2003) (*en banc*) (stating an advance was given for roof trusses); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 547 (2002) (noting the defendant "demanded advances for supplies that were never purchased"); Klink v. Commonwealth, 12 Va. App. 815, 818, 407 S.E.2d 5, 7 (1991) (stating the defendant ordered a door after receiving an advance); Boothe, 4 Va. App. at 485, 358 S.E.2d at 741 (mentioning an advance given for a septic system).

Thus, in determining whether an advance triggers the construction fraud statute, the relevant inquiry is the scope of the promise. We consider whether a defendant received an advance as a result of construction he promised to perform.[2]

---

[2] This test makes clear, for example, that an advance for a supply of bricks would fall within the statute if the person receiving the advance had also promised to install the bricks, even if the advance did not pay for labor. On the other hand, if the person receiving the advance promised to do nothing but supply bricks, the advance would not trigger the statute. Otherwise, any supply contract could constitute construction fraud.

There is no dispute in this case that Testerman received advances to purchase materials. Thus, the remaining issue concerns whether he obtained the advances as a result of promises to perform construction.

A promise is defined: "The manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something." Black's Law Dictionary 1332 (9th ed. 2009). "It is a word in free and common use." Richmond Eng'g & Mfg. Corp. v. Loth, 135 Va. 110, 151, 115 S.E. 774, 786 (1923) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the jury could conclude Testerman received the advances because of promises to perform construction. Concerning the countertops, Mrs. Kinney was asked: "And he was to install the countertops himself?" She responded: "Yes." A demand letter delivered to Testerman stated regarding the countertops: "You stated you would work at my house the weekend of November 9 and 10, and that you would 'take care of everything.' You stated that you would positively complete the job this week the week before Thanksgiving." Concerning the patio doors for the Ocean City project, Mr. Kinney was asked: "So he was to install them as well?" He replied: "Yeah. I would have him install them, sure, or I would help with it." The demand letter also recorded: "I paid you . . . for French doors that you were to help install in a townhouse I own in Ocean City, Md. We planned several weekends to work, but the doors never arrived." This evidence permitted the jury to find Testerman received the advances because of construction he promised to perform. Although the advances directly paid for materials, not labor, it sufficed that Testerman obtained them as a result of promises to perform construction.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.